WILLIAM N. KAMMER [SBN 53848]
wkammer@swsslaw.com
ALISON L. PIVONKA [SBN 156977]
apivonka@swsslaw.com
SOLOMON WARD SEIDENWURM & SMITH, LLP
401 B Street, Suite 1200
San Diego, California 92101
Telephone: (619) 231-0303
Facsimile: (619) 231-4755

Attorneys for COLDWATER CREEK INC.

FILED
JUL - 7 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY
DEPUTY

ORIGINAL

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

SUSAN E. MASSEY,

Plaintiff,

v.

COLDWATER CREEK INC.,

Defendants.

CASE NO. '08 CV 1208 L CAB

**COLDWATER'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**

28 U.S.C. §§ 1332(d)(2) and 1453(b)

[San Diego County Superior Court Case No. 37-2008–00085040–CU–BT–CTL]

TO THE CLERK OF THE ABOVE–CAPTIONED COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant Coldwater Creek Inc. ("Coldwater"), pursuant to 28 U.S.C. § 1441, *et seq.*, removes this action to the United States District Court for the Southern District of California, and in support, respectfully shows the Court as follows:

**BACKGROUND**

In an action filed in San Diego County Superior Court styled *Susan E. Massey v. Coldwater Creek Inc.*, Case No. 2008–00085040–CU–BT–CTL, the plaintiff seeks to certify a statewide class of Coldwater customers purportedly subjected to Coldwater's supposed "routine" business practice of requesting and recording "personal identification information in conjunction with a credit card transaction." Compl. ¶¶ 22, 32–33 (Exh. A). Principally relying on the Song–Beverly Credit Card Act of 1971, Cal. Civ. Code § 1747.08 ("Song–

Beverly Act"), the plaintiff demands, on behalf of herself and the purported class, a full panoply of remedies including statutory penalties, damages, injunctive relief, fluid or *cy pres* recovery, and attorneys' fees and costs. *See* Prayer for Relief.

This action was filed on June 3, 2008; the complaint was served on June 9, 2008. The matter is removable under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2), 1453(b). Coldwater has satisfied all necessary procedural requirements and therefore removes this action to the United States District Court for the Southern District of California.

**CAFA'S REMOVAL REQUIREMENTS ARE SATISFIED**

In enacting CAFA, Congress expressed its preference that the federal courts be an open forum for the airing of class action claims. Congress explicitly stated that CAFA's "provisions should be read broadly, with a strong preference that interstate actions should be heard in a federal court." S. Rep. No. 109–14 at 43 (2005) (*reprinted in* 2005 U.S.C.C.A.N. 3, 41). Indeed, Congress instructs the district courts to "err in favor of exercising jurisdiction." *Id.* at 42 (*reprinted in* 2005 U.S.C.C.A.N. at 40). Here, as the requirements for diversity jurisdiction under CAFA are satisfied, plaintiff's action should proceed in a federal forum.

1. **Class Action**. It is plain that this lawsuit is a class action as defined by 28 U.S.C. § 1332(d)(1)(B). CAFA defines a "class action" as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar state statute or rule of judicial procedure authorizing an action to be brought by one or more representative persons as a class action." *Id.* The plaintiff styles her complaint a "Class Action," filing on behalf of herself and "all others similarly situated." She alleges that she brings her lawsuit on behalf of a purported "Class" which she attempts to define within the pages of her Complaint. Compl. ¶¶ 22–28.

2. **Diversity of Citizenship**. At the time this lawsuit was filed and as of the date of this notice, contrary to representations in the Complaint, *see* Compl. ¶¶ 5, 9, Coldwater was and is a Delaware corporation with its principal place of business, headquarters and

place of operations in Sandpoint, Idaho. *See* Declaration of Doug Lieuallen (Exh. B). The vast majority of Coldwater's stores and employees are located *outside* the state of California, and *all* of Coldwater's corporate operations and executive and administrative functions (in addition to nearly all customer service activities) take place in Idaho. *Id.* ¶¶ 4, 6. *All* corporate officers work out of Sandpoint, and *all* of Coldwater's corporate policies and procedures originate there. *Id.* ¶ 7. Furthermore, Coldwater's corporate functions—legal, finance, accounting, marketing, and human resources—are based *exclusively* outside the state of California, and primarily in Idaho. *Id.* In short, by any measure, Idaho is Coldwater's place of operations and "nerve center." *See, e.g., Ready Transp., Inc. v. AAR Mfg., Inc.*, 2007 WL 4284728, *1 (E.D. Cal. Dec. 5, 2007) ("A corporation's principal place of business may be determined by a 'place of operations' test which finds a corporation's principal place of business is located in the state containing a substantial predominance of corporate operations. ... If a corporation's activities are not concentrated in one state, then the 'nerve center' test is used to determine where the corporation's principal place of business is by deciding where the majority of the corporation's executive and administrative functions are performed") (citations omitted).

At the time of the filing of this action and as of the date of this notice, the named plaintiff, Susan E. Massey ("Massey"), was a resident and citizen of California. *See* Compl. ¶ 7. Because California is neither Delaware nor Idaho, the diversity requirement of 28 U.S.C. § 1332(c)(1) & (d)(2)(A) is satisfied.

3. **Amount in Controversy**. The amount in controversy in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs, satisfying the amount in controversy requirement of 28 U.S.C. § 1332(d)(2). The Complaint seeks a wide variety of relief that includes:

(1) Statutory penalties to plaintiff and members of the putative classes in amount "to which he or she is entitled under" Cal. Civ. Code § 1747.08(e);

(2) Disgorgement of any "ill–gotten profits" from the use or sale of personal–identification information;

(3) General damages;

(4) Special damages;

(5) Exemplary or punitive damages;

(6) Fluid or *cy pres* recovery "where necessary to prevent Defendant from retaining the benefits of its wrongful conduct;"

(7) Injunctive relief;

(8) Attorneys' fees;

(9) Costs; and

(10) Prejudgment interest

*See* Prayer for Relief.

Even examining only the first category, it is abundantly clear that the plaintiff is seeking more than $5,000,000 from Coldwater in this action. While plaintiff does not spell out the amount of penalties to which she is "entitled," a quick review of the cited portion of the Song–Beverly Act (Cal. Civ. Code § 1747.08) reveals that Coldwater is exposed to statutory penalties of up to $1000 *per violation* (after the first such instance). On a daily basis, many customers in California engage in "credit card transactions" allegedly subject to the plaintiff's sweeping claims. Compl. ¶ 22. Indeed, Coldwater annually processes in excess of 5,000 customer credit card transactions in California alone. *See* Declaration of Mickey Quinn ¶ 3 (Exh. D). Therefore, potential statutory penalties alone in this case well exceed the $5,000,000 threshold requirement of CAFA. 28 U.S.C. § 1332(d)(2). Nor, as outlined above, is this the only relief sought by Plaintiff. In her kitchen sink approach, plaintiff also requests injunctive relief (which, if successful, may require Coldwater to implement, at great cost, new policies and practices), attorneys' fees, and recovery on a host of damage theories. Given her Prayer for Relief, it cannot reasonably be disputed that the amount in controversy exceeds $5,000,000 in the aggregate, and, consequently, this Court has jurisdiction under CAFA. This is particularly true given instruction by federal courts that the burden on the defendant not be "daunting." *See McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994) (noting that a removing defendant is not obligated to "research, state,

and prove the plaintiff's claims for damages").

Indeed, in at least three other putative class actions recently brought under the Song–Beverly Act (including one in this Court), the defendant removed the case to federal court and prevailed on a motion to remand. *See Romeo v. Home Depot USA Inc.*, 06–CV–1505 IEG (BLM) (Order Denying Plaintiffs' Motion to Remand); *Korn v. Polo Ralph Lauren Corp.*, 07–CV–2745 FCD (JFM) (same); *Saulic v. Symantec Corp.*, 07–CV–610 AHS (PLA) (same) (collectively Exh. E).

4. **Number of Proposed Class Members.** Although denying the substance and merit of the allegations, Coldwater believes in good faith that, as alleged, the putative class well exceeds 100 members. Indeed, plaintiff alleges that the proposed class would encompass any consumer "in California from whom Defendant requested and recorded personal identification information in conjunction with a credit card transaction." Compl. ¶ 22. She alleges, as she must, that "the members of the Class are so numerous that joinder of all members is impracticable." Compl. ¶ 23. Further, she goes on to allege that the defendant utilizes an "Information Capture Policy," and that Coldwater engaged in this conduct "*on each and every day* during the one–year period preceding the filing of this Class Action Complaint . . . ." Id. ¶ 32 (emphasis added). Plaintiff alleges that this was Coldwater's "routine business practice" carried out "with respect to *every person* who, while using a credit card, purchases *any* product from *any* of Defendant's stores in the State of California." *Id.* ¶ 33 (emphasis added). As noted above, Coldwater processes over 5,000 such credit card transactions each year in California. Accordingly, this action satisfies the requirement of 28 U.S.C. § 1332(d)(5) that the putative class include at least 100 persons.

5. **Timeliness.** This removal notice is timely filed as required by 28 U.S.C. § 1446(b). Coldwater was served with the Complaint on June 9, 2008, and files this notice within 30 days after receipt.

6. **Exceptions Do Not Apply.** The exceptions to removal under 28 U.S.C. §§ 1332(d) and 1446 do not apply.

///

## OTHER PROCEDURAL REQUISITES FOR REMOVAL ARE SATISFIED

Coldwater has complied with 28 U.S.C. §§ 1446(a) and (d). Under 28 U.S.C. § 1446(a), a true and correct copy of all of the process, pleadings, or orders on file in the state court or served on Coldwater in the state court are provided as Exhibit A. Pursuant to 28 U.S.C. § 1446(d), a notice of filing of removal (with a copy of this notice of removal) has been filed with the clerk of the Superior Court of the State of California, County of San Diego, Case No. 2008–00085040–CU–BT–CTL and has been served on plaintiff's attorneys. Copies of the relevant documents are provided as Exhibit F.

## CONCLUSION

By this notice and attachments, Coldwater does not waive any objections it may have as to improper service, jurisdiction, or venue, on any other defenses or objections to this action. Likewise, Coldwater intends no admission of fact, law, or liability by this notice, and reserves all defenses, motions, and pleas. At this time, Coldwater seeks only that this action be removed to this Court, that all further proceedings in the state court suit be stayed, and that Coldwater obtain all additional relief to which it is entitled.

DATED: July 7, 2008

SOLOMON WARD SEIDENWURM & SMITH, LLP

By: Bill Kammer

WILLIAM N. KAMMER
Attorneys for COLDWATER CREEK INC.

# EXHIBIT A

EXHIBIT A

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: 330 West Broadway<br>MAILING ADDRESS: 330 West Broadway<br>CITY AND ZIP CODE: San Diego, CA 92101<br>BRANCH NAME: Central<br>TELEPHONE NUMBER: (619) 685-8025 | |
| PLAINTIFF(S) / PETITIONER(S): Susan E. Massey | |
| DEFENDANT(S) / RESPONDENT(S): Coldwater Creek, Inc. | |
| MASSEY VS. COLDWATER CREEK, INC. | |
| **NOTICE OF CASE ASSIGNMENT** | CASE NUMBER:<br>37-2008-00085040-CU-BT-CTL |

Judge: Joan M. Lewis

Department: C-65

**COMPLAINT/PETITION FILED:** 06/03/2008

**CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW**

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

**TIME STANDARDS:** The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

**COMPLAINTS:** Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

**DEFENDANT'S APPEARANCE:** Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

**DEFAULT:** If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

James R. Patterson, State Bar No. 211102
Harry W. Harrison, State Bar No. 211141
Cary A. Kinkead, State Bar No. 216545
HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway, 29th Floor
San Diego, CA 92101
Telephone: (619) 756-6990
Facsimile: (619) 756-6991

James M. Lindsay, State Bar No. 164758
Gene J. Stonebarger, State Bar No. 209461
LINDSAY & STONEBARGER
A Professional Corporation
620 Coolidge Drive, Suite 225
Folsom, CA 95630
Telephone: (916) 294-0002
Facsimile: (916) 294-0012

Attorneys for Plaintiff and the Class

08 JUN -3 PM 4:09
SAN DIEGO COUNTY, CA

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SAN DIEGO**

| | |
|---|---|
| SUSAN E. MASSEY, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>COLDWATER CREEK, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO.: 37-2008-00085040-CU-BT-CTL<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR CIVIL PENALTIES, DAMAGES, AND INJUNCTIVE RELIEF [CIVIL CODE § 1747.08; BUSINESS AND PROFESSIONS CODE § 17200; AND INVASION OF PRIVACY]**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff SUSAN E. MASSEY, on behalf of herself and all others similarly situated, complains and alleges upon information and belief based, among other things, upon the investigation made by Plaintiff by and through her attorneys, as follows:

## I. INTRODUCTION

1. California Civil Code section 1747.08 generally states that when a merchant is engaged in a retail transaction with a customer, the merchant may neither (1) request personal identification information from a customer paying for goods with a credit card, and then record

that personal identification information upon the credit card transaction form or otherwise; nor (2) require as a condition to accepting the credit card as payment the cardholder to provide the customer's personal identification information which the retailer causes to be written, or otherwise records upon the credit card transaction form or otherwise.[1]

2. Defendant operates retail stores throughout the United States, including California. Defendant is engaging in a pattern of unlawful and deceptive business practices by utilizing an "Information Capture Policy" whereby Defendant's cashiers both request and record credit card numbers and zip codes from customers using credit cards at the point-of-sale in Defendant's retail establishments. Defendant's acts and practices as herein alleged were at all times intentional.

3. This action arises from Defendant's violations of California Civil Code section 1747.08, Business and Professions Code section 17200 and/or invasion of privacy, by and through Defendant's requesting and recording of Plaintiff's and the Class members' credit card numbers and zip codes during the point-of-sale process at Defendant's retail establishments. On information and belief, Defendant uses the zip code information obtained from the cardholder to acquire additional personal information, including the cardholder's physical residential address by pairing the zip code with the cardholder's name obtained from the credit card. Such conduct is performed intentionally and without the knowledge or consent of the cardholder.

4. Plaintiff does not seek any relief greater than or different from the relief sought for the Class of which Plaintiff is a member. If successful, this action will enforce an important right affecting the public interest and will confer a significant benefit, whether pecuniary or non-pecuniary, on a large class of persons. Private enforcement is necessary and places a

---

[1] California Civil Code section 1747.08 states in relevant part:
"(a) Except as provided in subdivision (c), no person, firm, partnership, association, or corporation which accepts credit cards for the transaction of business shall do either of the following:
(2) Request, or require as a condition to accepting the credit card as payment in full or in part for goods or services, the cardholder to provide personal identification information, which the person, firm, partnership, association, or corporation accepting the credit card writes, causes to be written, or otherwise records upon the credit card transaction form or otherwise.
(b) For purposes of this section 'personal identification information,' means information concerning the cardholder, other than information set forth on the credit card, and including, but not limited to, the cardholder's address and telephone number."

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

disproportionate financial burden on Plaintiff in relation to Plaintiff's stake in the matter.

## II. JURISDICTION AND VENUE

5. Plaintiff is informed and believes that Defendant's principal place of business is in California. Defendant has accepted credit cards for the transaction of business throughout California, including the County of San Diego, which has caused both obligations and liability of Defendant to arise in the County of Diego.

6. The amount in controversy exceeds the jurisdictional minimum of this Court.

## III. THE PARTIES

### A. Plaintiff

7. Plaintiff SUSAN E. MASSEY (herein referred to as "Plaintiff") is a resident of California, and entered into a retail transaction with Defendant at one of Defendant's California stores.

8. Plaintiff brings this class action against Defendant, pursuant to California Code of Civil Procedure section 382, on behalf of herself and all persons in California from whom Defendant requested and recorded personal identification information in conjunction with a credit card transaction (herein referred to as the "Class"). Excluded from the Class are Defendant, its corporate parents, subsidiaries and affiliates, officers and directors, any entity in which Defendant has a controlling interest, and the legal representatives, successors or assigns of any such excluded persons or entities.

### B. Defendant

9. Defendant COLDWATER CREEK, INC. (herein referred to as "Defendant"), is a Delaware corporation. Plaintiff is informed and believes that Defendant's principal place of business is in California. Defendant operates retail stores throughout California, including stores in San Diego County.

### C. Doe Defendants

10. Except as described herein, Plaintiff is ignorant of the true names of Defendants sued as DOES 1 through 50, inclusive, and the nature of their wrongful conduct, and therefore sues these DOE Defendants by such fictitious names. Plaintiff will seek leave of the Court to

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

amend this complaint to allege their true names and capacities when ascertained.

**D. Agency/Aiding And Abetting**

11. At all times herein mentioned, Defendants, and each of them, were an agent or joint venturer of each of the other Defendants, and in doing the acts alleged herein, were acting within the course and scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

12. Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiff and the class, as alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of his/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

## IV. CONDUCT GIVING RISE TO VIOLATIONS OF THE LAW

**A. Plaintiff's Contact with Defendant**

13. Within the last 12 months, Plaintiff went to Defendant's retail store located in California.

14. Plaintiff entered Defendant's store and proceeded to select a product from the store that Plaintiff intended to purchase.

15. After selecting an item, Plaintiff proceeded to the cashiers' section of Defendant's store to pay for the item selected through the use of a credit card.

16. Defendant's employee saw that Plaintiff had selected products that Plaintiff wished to purchase from Defendant and, as part of Defendant's Information Capture Policy, then requested personal identification information from Plaintiff in the form of Plaintiff's zip code, without informing Plaintiff of the consequences if Plaintiff did not provide Defendant's employee with Plaintiff's zip code.

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

EXHIBIT A
PAGE 5

17. Plaintiff, believing that she was required to provide her zip code to complete the transaction, told Defendant's employee Plaintiff's zip code.

18. Defendant's employee then typed and recorded Plaintiff's zip code into an electronic cash register at the checkout counter adjacent to both the employee and Plaintiff.

19. Defendant's employee then proceeded to inform Plaintiff of the amounts due to Defendant for said product. Plaintiff handed Defendant's employee Plaintiff's credit card, after which said employee proceeded to swipe, enter, and/or record the credit card number into an electronic cash register at the checkout counter adjacent to both the employee and Plaintiff. At this point in the transaction, Defendant has Plaintiff's credit card number, name and zip code recorded in its databases.

20. Defendant's employee made no attempt to erase, strikeout, eliminate, or otherwise delete Plaintiff's personal identification information from the electronic cash register after Plaintiff's credit card number was recorded.

21. Defendant's employee and Plaintiff completed the transaction and Plaintiff left Defendant's store with her purchased items.

## V. PLAINTIFF'S CLASS ACTION ALLEGATIONS

22. This lawsuit is brought on behalf of an ascertainable statewide class consisting of all persons in California from whom Defendant requested and recorded personal identification information in conjunction with a credit card transaction (the "Class"). Excluded from the Class are Defendant, its corporate parents, subsidiaries and affiliates, officers and directors, any entity in which Defendant has a controlling interest, and the legal representatives, successors or assigns of any such excluded persons or entities.

23. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, such information can be ascertained through appropriate discovery, from records maintained by Defendant and its agents.

24. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable, the likelihood

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

of individual Class members prosecuting separate claims is remote and individual Class members do not have a significant interest in individually controlling the prosecution of separate actions. Relief concerning Plaintiff's rights under the laws alleged herein and with respect to the Class as a whole would be appropriate. Plaintiff knows of no difficulty to be encountered in the management of this action which would preclude its maintenance as a class action.

25. There is a well-defined community of interest among the members of the Class because common questions of law and fact predominate, Plaintiff's claims are typical of the members of the Class, and Plaintiff can fairly and adequately represent the interests of the Class.

26. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

a. whether each Class member engaged in a credit card transaction with Defendant;

b. whether Defendant requested the cardholder to provide personal identification information and recorded the personal identification of the cardholder, during credit card transactions with Class members;

c. whether Defendant's conduct of requesting the cardholder to provide personal identification information during credit card transactions and recording the personal identification information of the cardholder constitutes violations of California Civil Code section 1747.08;

d. whether Plaintiff and the Class are entitled to injunctive relief; and

e. whether Plaintiff and the Class have sustained damages, and the proper measure of damages.

27. Plaintiff's claims are typical of those of the other Class members because Plaintiff, like every other Class member, was exposed to virtually identical conduct and is entitled to civil penalties in amounts of up to one thousand dollars ($1,000) per violation pursuant to California Civil Code section 1747.08(e).

28. Plaintiff can fairly and adequately represent the interests of the Class, she has no conflicts of interest with other Class members, and has retained counsel competent and

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

experienced in class action and civil litigation.

**FIRST CAUSE OF ACTION FOR VIOLATIONS OF CALIFORNIA CIVIL CODE § 1747.08 [SONG-BEVERLY CREDIT CARD ACT OF 1971]**

29. Plaintiff refers to and incorporates by reference as though set forth fully herein paragraphs 1 through 28 of this Complaint.

30. California Civil Code section 1747.08 prohibits any corporation, which accepts credit cards for the transaction of business, from requesting the cardholder to provide personal identification information which the corporation then records in conjunction with a credit card transaction.

31. Defendant is a corporation that accepts credit cards for the transaction of business.

32. During credit card transactions entered into at Defendant's stores on each and every day during the one-year period preceding the filing of this Class Action Complaint through the present, Defendant utilized, and continues to utilize, an "Information Capture Policy" whereby Defendant's cashiers both request and record personal identification information and credit card numbers from customers using credit cards at the point-of-sale in Defendant's retail establishments.

33. It is and was Defendant's routine business practice to intentionally engage in the conduct described in this cause of action with respect to every person who, while using a credit card, purchases any product from any of Defendant's stores in the State of California.

34. Due to Defendant's violations as set forth herein, Plaintiff and the Class are entitled to civil penalties in amounts of up to one thousand dollars ($1,000) per violation pursuant to California Civil Code section 1747.08(e).

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

**SECOND CAUSE OF ACTION FOR VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, *ET SEQ.***

35. Plaintiff refers to and incorporates by reference as though set forth fully herein paragraphs 1 through 34 of this Complaint.

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

36. During credit card transactions entered into at Defendant's stores on each and every day during the four-year period preceding the filing of this Class Action Complaint through the present, Defendant wrongfully requested and recorded personal identification information from Plaintiff and members of the Class, as set forth above, and then intentionally used that information without consent to acquire additional personal information belonging to Plaintiff and the Class Members, including their physical residential addresses.

37. After acquiring personal identification information from Plaintiff and members of the Class at the point of sale, Defendant utilized customized computer software to perform reverse searches from "data warehousing" or "data mining" databases. These databases contain millions of names, e-mail addresses, residential telephone numbers and residential addresses, and are indexed in manner that resembles a reverse telephone book. Essentially, Defendant's software matched the respective Class member's now-known name, zip code and/or other personal information with said Class member's previously unknown addresses, thereby covertly giving Defendant access to the Class members' names <u>and</u> addresses, among other personal identification information.

38. Defendant did not inform Class members (or any other customer) at the point of sale that by providing the customer's personal identification information, Defendant can then obtain the consumer's home address and match the customer's name, address, and credit card number and maintain the same in Defendant's database.

39. As a result of Defendant's violation of California Civil Code section 1747.08, as set forth above, and Defendant's violation of California Business and Professions Code section 17200, as set forth below, Plaintiff and members of the Class have suffered an injury in fact by, among other things, having their personal information disseminated to others, and being exposed to identity theft. Plaintiff and members of the Class have also lost money as a result of not receiving compensation for their home address information, and not receiving a proportional share of income derived by Defendant from having this information and using the information for commercial gain. Finally, Plaintiff and members of the Class have lost property in that Defendant improperly took Plaintiff's and Class members' home address information, which is

their property, without their express permission.

40. Defendant's conduct in violating California Civil Code section 1747.08, as set forth above, violates California Business and Professions Code section 17200 in the following respects:

a. Defendant's practice of wrongfully requesting and recording consumer's personal identification information, as set forth above, constitutes an unlawful business practice because Defendant's conduct violates California Civil Code section 1747.08;

b. Defendant's practice of wrongfully requesting and recording consumer's personal identification information, as set forth above, constitutes an unfair business practice because Defendant's practice is unethical, unscrupulous, and substantially injurious to consumers. The harm to Plaintiff, members of the Class, and to members of the general public, outweighs the utility, if any, of Defendant's policy and practice;

c. Defendant's practice of wrongfully requesting and recording consumer's personal identification information, as set forth above, constitutes a fraudulent business practice because Defendant's practice is likely to mislead Plaintiff, members of the Class, and members of the general public, by deceiving and leading consumers to believe, among other things, that consumers are obligated, in some manner, to provide their personal identification information to Defendant in order to complete their transaction; and

d. Defendant's practice of wrongfully requesting and recording consumer's personal identification information, as set forth above, further constitutes an unfair and fraudulent business practice because the personal identification information that Defendant obtains from Plaintiff and Class members, is used by Defendant, without Plaintiff's and the Class members' knowledge, in order to obtain their address information, all for the profit of Defendant.

41. Defendant's unlawful, unfair, and fraudulent business practices, as described above, present a continuing threat to Plaintiff, members of the Class, and members of the public in that Defendant continues to wrongfully request and record consumers' personal identification information. In addition, Defendant has been unjustly enriched as a result of its conduct. Plaintiff, other members of the general public, and members of the Class have no other adequate

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

remedy of law in that absent equitable relief from the Court, as Defendant is likely to continue to injure consumers, reap unjust enrichment, and harm the public interest, thus engendering a multiplicity of judicial proceedings.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

**THIRD CAUSE OF ACTION**
**FOR INVASION OF PRIVACY**

42. Plaintiff refers to and incorporates by reference as though set forth fully herein paragraphs 1 through 41 of this Complaint.

43. During credit card transactions entered into at Defendant's stores on each and every day during the two-year period preceding the filing of this Class Action Complaint through the present, Defendant invaded Plaintiff's and the Class members' right to privacy by wrongfully requesting and recording their personal identification information, as set forth above.

44. The intrusion was offensive and objectionable to Plaintiff, the Class and to a reasonable person of ordinary sensibilities in that the personal identification information that Defendant obtains, is used by Defendant, without Plaintiff's and the Class members' knowledge, in order to obtain their address information, all for the profit of Defendant.

45. The intrusion was into a place or thing which was private and is entitled to be private, in that Defendant does not need the consumers' personal identification information in order to proceed with the credit card transaction.

46. As a proximate result of Defendant's above acts, Plaintiff's and Class members' addresses were viewed, printed, distributed, and used by Defendant for its own profit, all to the general damage in an amount according to proof.

47. Defendant is guilty of oppression, fraud, or malice by obtaining personal identification information with a willful and conscious disregard of Plaintiff's and the Class members' right to privacy. As evidenced by Defendant's ongoing "Information Capture Policy," Defendant's cashiers both request and record personal identification information from customers using credit cards at the point-of-sale in Defendant's retail establishments. Defendant then performs a reverse search utilizing customized computer software, without the knowledge and

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

consent of its consumers, to match the consumer's name and personal identification information with the consumer's previously unknown addresses, thereby giving Defendant access to its consumers' addresses, all which is accomplished without the permission and knowledge of Plaintiff and the Class members. This information is then maintained and used by Defendant for its own profit.

48. Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause Plaintiff, members of the Class, and members of the public great and irreparable injury in that the personal identification information maintained by Defendant can be viewed, printed, distributed, and sold by Defendant. Plaintiff and members of the Class have no adequate remedy at law for the injuries in that a judgment for the monetary damages will not end the invasion of privacy for Plaintiff, the Class, and the public.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## PRAYER FOR RELIEF

PLAINTIFF AND THE CLASS PRAY for judgment against Defendant as follows:

**As to the First Cause of Action**

1. For an award to Plaintiff and to each member of the Class the civil penalty to which he or she is entitled under California Civil Code section 1747.08(e);

**As to the Second Cause of Action**

2. That the Court preliminarily and permanently enjoin Defendant from utilizing an "Information Capture Policy" whereby Defendant's cashiers both request and record personal identification information and credit card numbers from customers using credit cards at the point-of-sale in Defendant's retail establishments;

3. That the Court disgorge any ill-gotten profits from Defendant's use or sale of Plaintiff's and the Class' personal identification information;

**As to the Third Cause of Action**

4. That the Court preliminarily and permanently enjoin Defendant from utilizing an "Information Capture Policy" whereby Defendant's cashiers both request and record personal identification information and credit card numbers from customers using credit cards at the

point-of-sale in Defendant's retail establishments;

5. For general damages according to proof;

6. For special damages according to proof;

7. For exemplary or punitive damages;

**As to All Causes of Action**

8. That the Court certifies this action as a class action;

9. For distribution of any moneys recovered on behalf of the Class of similarly situated consumers via fluid recovery or *cy pres* recovery where necessary to prevent Defendant from retaining the benefits of its wrongful conduct;

10. For an award of attorneys' fees as authorized by statute including, but not limited to, the provisions of California Code of Civil Procedure § 1021.5, and as authorized under the "common fund" doctrine, and as authorized by the "substantial benefit" doctrine;

11. For costs of the suit;

12. For prejudgment interest at the legal rate;

13. And for such other relief as the Court may deem proper.

Dated: May 30, 2008

HARRISON PATTERSON & O'CONNOR LLP

By: ______________________
James R. Patterson
Harry W. Harrison
Cary A. Kinkead
Attorneys for Plaintiff and the Class

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

# SUMMONS
*(CITACION JUDICIAL)*

SUM-100

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

FILED
CIVIL BUSINESS OFFICE 16
CENTRAL DIVISION

08 JUN -3 PM 4:09

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***

COLDWATER CREEK, INC., a Delaware corporation; and DOES 1 through 50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

SUSAN E. MASSEY, on behalf of herself and all others similarly situated,

**You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.**
**There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.**

***Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una Carta o una llamada telefóinica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la cortey más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la Corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y biénes sin más advertencia. Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.***

The name and address of the court is
*(El nombre y dirección de la corte es):*
**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

CASE NUMBER: *(Número del Caso):* 37-2008-00085040-CU-BT-CTL

- ☒ HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101-3827
- ☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92081-6643
- ☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020-3941
- ☐ RAMONA BRANCH 1428 MONTECITO RD., RAMONA CA 92065-5200
- ☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649
- ☐ JUVENILE COURT, 2851 MEADOW LARK DR., SAN DIEGO, CA 92123-2792

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el nómero de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

James R. Patterson/Matthew J. O'Connor
HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway, 29th Floor
San Diego, CA 92101
Tel: 619-756-6990

DATE: *(Fecha)* JUN - 3 2008

Clerk, by *(Secretario)* CLERK OF THE SUPERIOR COURT — I. REYES, Deputy *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010))
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL] SUPERIOR COURT SAN DIEGO COUNTY, CA

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☐ on behalf of *(specify)*:

   under ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416 90 (individual)
   ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]
SDSC CIV-219(Rev. 1-04)

SUMMONS

Code of Civil Procedure §§ 412.20, 465

American LegalNet, Inc.
www.USCourtForms.com

EXHIBIT A
PAGE 14

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, St... r number, and address):
James R. Patterson SBN: 211102
HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway, Ste. 1905
San Diego, CA 92101
TELEPHONE NO.: 619-756-6990 FAX NO.: 619-756-6991
ATTORNEY FOR (Name): Plaintiff and the Class

FOR COURT USE ONLY

08 JUN -3 PM 4:09
... COURT
SAN DIEGO COUNTY, CA

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Central Division

CASE NAME: Susan E. Massey v. Coldwater Creek, Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 37-2008-00085040-CU-BT-CTL |
|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 1811) | JUDGE:<br>DEPT: |

*Items 1-5 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☒ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigatio (Cal. Rules of Court, rules 1800-1812)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☒ is not complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f ☐ Substantial postjudgment judicial supervision
3. Type of remedies sought *(check all that apply)*:
   a. ☒ monetary b. ☒ nonmonetary; declaratory or injunctive relief c. ☒ punitive
4. Number of causes of action *(specify)*: 6
5. This case ☒ is ☐ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: May 30, 2008
James R. Patterson, Esq.
(TYPE OR PRINT NAME) (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2006]

CIVIL CASE COVER SHEET

American Legal Net, Inc. www.USCourtForms.com

Cal. Rules of Court, rules 201.8, 1800–1812; Standards of Judicial Administration, § 19
www.courtinfo.ca.gov

EXHIBIT A
PAGE 15

EXHIBIT B

# EXHIBIT B

ALISON L. PIVONKA [SBN 156977]
apivonka@swsslaw.com
SOLOMON WARD SEIDENWURM & SMITH, LLP
401 B Street, Suite 1200
San Diego, California 92101
Telephone: (619) 231-0303
Facsimile: (619) 231-4755

Attorney for Defendant
COLDWATER CREEK INC.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SUSAN E. MASSEY<br><br>Plaintiff,<br><br>v.<br><br>COLDWATER CREEK INC.,<br><br>Defendant. | CASE NO. ____________<br><br>**DECLARATION OF DOUG LIEUALLEN IN SUPPORT OF COLDWATER'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT** |

**EXHIBIT B**
**PAGE 16**

Pursuant to 28 U.S.C. § 1746, I, Doug Lieuallen, declare as follows:

1. I am over the age of eighteen and competent to testify. I have personal knowledge or information and belief of the facts set forth below, and to the extent they are based on information and belief, I believe them to be true.

2. I am Divisional Vice-President of Finance for defendant Coldwater Creek Inc. ("Coldwater").

3. Coldwater is incorporated in the state of Delaware.

4. While Coldwater does operate several stores in California, as well as nationwide, its place of operations is and has always been in Sandpoint, Idaho. Less than ten percent of Coldwater's stores and employees are located in California.

5. Coldwater's corporate headquarters are located in Sandpoint. In connection with the preparation and review of this declaration, I visited Coldwater's web site, which prominently notes that "our headquarters…[are] in Sandpoint, Idaho, tucked away between the Selkirk and Cabinet Mountains on the shores of Lake Pend Oreille" (ellipses and brackets added). I understand that a copy of the relevant website page is being provided to the Court as Exhibit C.

6. Idaho is Coldwater's principal place of business, where all corporate operations and executive and administrative functions (in addition to nearly all customer service activities) take place.

7. By any measure, the vast majority of Coldwater's corporate activities occur in Idaho. All corporate officers work out of Sandpoint, and all of Coldwater's corporate policies and procedures originate there. Furthermore, Coldwater's corporate functions — legal, finance, accounting, marketing, and human resources — are based primarily in the state of Idaho (and exclusively outside the state of California).

**EXHIBIT B**
**PAGE 17**

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on July 1, 2008, in Sandpoint, Idaho.

EXHIBIT C

# EXHIBIT C

Coldwater Creek Case 3:08-cv-01208-JLS-CAB Document 1 Filed 07/07/2008 Page 31 of 80 http://www.coldwatercreek.com/PressRoom/aboutCWC.aspx

Coldwater Creek
Home · Stores · My Account · Customer Service · Live Help · View My Bag
Apparel · What's New · Jeans Shop · Accessories · Home & Gifts · Outlet · Search Keyword or item# GO

About
Press Room
FAQs

# About Coldwater Creek

2
95

**A little bit about the Creek**
Welcome from all of us at Coldwater Creek! You've reached our headquarters in Sandpoint, Idaho, tucked away between the Selkirk and Cabinet Mountains on the shores of Lake Pend Oreille. We're glad you found us. We specialize in women's apparel, jewelry, accessories and gifts. Our merchandise is offered through a growing number of retail stores across the country, on our website at www.coldwatercreek.com, and in our direct-mail catalogs.

We began in 1984 as a home business with only one phone, an extra-long cord, a closet stuffed with merchandise and a fierce determination to set new standards for mail order service. Today, we have about 10,000 employees and the home office has grown to a 20-acre campus surrounded by broad mountain vistas. Our East Coast Operations Center in Mineral Wells, West Virginia, ships packages to our large base of customers, while also replenishing our stores from coast to coast. A complete list of current and future Coldwater Creek store locations can be found by using our Store Locator, located on our home page, or by clicking here.

catalog
order from or request a catalog

stores
summer sale up to 50% off

outlet
up to 70% off original prices

Share your journey...for the Cure.
Begin a journey to end breast cancer forever

E-mail Updates name@domain.com Sign Up

Gift Cards · As Seen In · 100% Satisfaction Guarantee ~ Contact Us or Call 1-800-510-2808
Customer Service · Order Status · Exchanges & Returns · Privacy & Security · Recall Notice · Site Map
Careers at Coldwater Creek · About Coldwater Creek, Inc. · Investor Relations · Social Responsibility · Terms of Use © 1984 - 2008

**EXHIBIT C**
**PAGE 19**

1 of 1

6/19/2008 9:43 AM

# EXHIBIT D

ALISON L. PIVONKA [SBN 156977]
apivonka@swsslaw.com
SOLOMON WARD SEIDENWURM & SMITH, LLP
401 B Street, Suite 1200
San Diego, California 92101
Telephone: (619) 231-0303
Facsimile: (619) 231-4755

Attorney for Defendant
COLDWATER CREEK INC.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SUSAN E. MASSEY<br>Plaintiff,<br>v.<br>COLDWATER CREEK INC.,<br>Defendant. | CASE NO. ____________<br>**DECLARATION OF MICKEY QUINN IN SUPPORT OF COLDWATER'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT** |

**EXHIBIT D**
**PAGE 20**

Pursuant to 28 U.S.C. § 1746, I, Mickey Quinn, declare as follows:

1. I am over the age of eighteen and competent to testify. I have personal knowledge or information and belief of the facts set forth below, and to the extent they are based on information and belief, I believe them to be true.

2. I am Divisional Vice-President of Retail Operations and Spas for defendant Coldwater Creek Inc. ("Coldwater"). As part of my employment duties, I am familiar with Coldwater's processing of credit card transactions.

3. Based upon my personal knowledge, information, and belief, over the last year, Coldwater has processed more than 5,000 credit card transactions in the state of California.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on July 1, 2008, in Sandpoint, Idaho.

EXHIBIT E

# EXHIBIT E

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

BRIAN KORN, individually; on behalf of all others similarly situated,

Plaintiffs,

v.

POLO RALPH LAUREN CORPORATION, a Delaware Corporation; and DOES 1 through 50 inclusive,

Defendants.

NO. CIV. S-07-02745 FCD JFM

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on plaintiff Brian Korn's ("plaintiff" or "Korn") motion to remand the instant action to the Superior Court of California for the County of Solano on the grounds that defendant has not established that (1) it is not a citizen of California; (2) the putative class members' claims exceed the requisite jurisdictional amount in controversy of $5,000,000 pursuant to the Class Action Fairness Act of 2005 (the "CAFA"), 28 U.S.C. § 1332(d); and (3) the exceptions to CAFA do not apply. Defendant Polo Ralph Lauren Corporation ("defendant"

or "Polo") opposes the motion, arguing that it has proffered sufficient evidence to demonstrate that it is a non-citizen of California and that, more likely than not, the amount in controversy exceeds the jurisdictional minimum. For the reasons set forth below,[1] plaintiff's motion is DENIED.

**BACKGROUND**

On November 2, 2007, plaintiff filed a class action complaint in the Solano County Superior Court in the State of California (hereinafter "the complaint"), alleging two causes of action for violations of California Civil Code § 1747.08, arising out of defendant's (1) requests for and recording of telephone numbers and addresses when a customer pays for goods with a credit card; and (2) utilization of a credit card form which contains preprinted spaces for the telephone number and address of the cardholder. (Compl. ¶ 1). Plaintiff's complaint identifies two putative classes, the "Purchase Class" and the "Refund Class." (Id. ¶¶ 28, 36). The putative Purchase Class consists of "all persons in California from whom [d]efendant requested and recorded personal identification information as part of a credit card transaction." (Id. ¶ 28). The putative Refund Class consists of "all persons in California who entered into credit refund transactions with [d]efendant, wherein a credit card transaction form was utilized which contained a pre-printed space specifically designated for filling in the telephone number and/or address of the cardholder." (Id. ¶ 36).

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. See E.D. Cal. L.R. 78-230(h).

On December 19, 2007, defendant removed the action to this court on the basis of the CAFA. The CAFA grants district courts original jurisdiction over civil class actions filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant and the amount in controversy for the putative class members in the aggregate exceeds the sum or value of $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). The Act authorizes removal of such actions pursuant to 28 U.S.C. § 1446.

Plaintiff challenges the propriety of the removal on grounds that the minimal diversity of citizenship requirement is not met and that defendant has not demonstrated the requisite amount in controversy. Plaintiff's complaint alleges that Defendant is a Delaware corporation with its principal place of business in New Jersey. (Id. ¶ 11). Plaintiff's complaint does not allege a specific amount of damages. However, the complaint does provide that the statutory civil penalties for the alleged violations are up to $1000 per violation. In removing the action, defendant supported its Notice of Removal with declarations setting forth the underlying facts needed to calculate the amount in controversy based on the allegations in the complaint. Specifically, defendant submitted the declaration of Lee Jurgens ("Jurgens"), Director of Sales Audit for defendant, which provides that defendant processed more than 5,000 credit card transactions over the last year in the state of California. (Decl. of Lee Jurgens ("Jurgens Decl."), Ex. B to Notice of Removal, filed Dec. 19, 2007). Defendants contend that this evidence demonstrates that the amount in controversy exceeds

$5,000,000, notwithstanding attorneys' fees, which are pled and properly considered in ascertaining the amount in controversy.

**ANALYSIS**

**A. Diversity of Citizenship**

Plaintiff contends that the court should remand this matter to state court because defendants have not demonstrated that there is diversity of citizenship. Specifically, plaintiff contends that defendant fails to allege specific facts to prove that it is not a "citizen" of California.

Where a party seeks to invoke federal jurisdiction on the basis of diversity of citizenship, the law places the burden of persuasion on the party seeking to invoke the court's jurisdiction. Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990). For purposes of diversity jurisdiction, a corporation is a citizen in the state of its incorporation, as well as in the state of its principal place of business. Breitman v. May Co. California, 37 F.3d 562, 564 (9th Cir. 1994).

As an initial matter, plaintiff alleges in his complaint that defendant is a Delaware corporation with its principal place of business in New Jersey. (Compl. ¶ 11). A statement in a complaint is a judicial admission. Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988). "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." Id. Plaintiff is bound by the allegations in his complaint that assert defendant's citizenship,

for purposes of diversity jurisdiction, is in Delaware and New Jersey.

However, defendant has also proffered evidence that demonstrates it is not a citizen of California for purposes of diversity jurisdiction.[2] In the Ninth Circuit, courts must first apply the "place of operations test" in determining the principal place of business of a corporation. "The 'place of operations test' locates a corporation's principal place of business in the state which 'contains a substantial predominance of corporate operations.'" Tosco Corp. v. Communities for a Better Env't, 236 F.3d 495, 500 (9th Cir. 2001). "Substantial predominance" requires that the amount of a corporation's business activity in one state be significantly larger than in any other state. Id. Factors that may be considered in this inquiry include where sales take place, production activities, location of employees, tangible property, and sources of income. Id. If the activities of a corporation do not substantially predominate in any one state, courts must apply the "nerve center test," which "locates a corporation's principal place of business in the state where the majority of its executive and administrative functions are performed." Id.

Defendant presents evidence that it does not conduct a substantial predominance of its business activities in California. Defendant operates 445 stores worldwide with 273 stores in the United States. (Decl. of Laurie Winthrop

---

[2] Neither party disputes that defendant is a Delaware corporation. (See Decl. of Laurie Winthrop ("Winthrop Decl."), filed Feb. 8, 2008, ¶ 4).

("Winthrop Decl."), filed Feb. 8, 2008, ¶ 5). Of the 273 stores in the United States, 37 are located in California, 35 in New York, 23 in Florida, 17 in Texas, 8 in Georgia and Pennsylvania, 6 in North Carolina and New Jersey, and 5 in Illinois and Connecticut. (Id.) Defendant also has less employees in California than in other locations; 3,661 of its employees are located in New York as compared to 1,081 employees located in California. (Id. ¶ 6). Further, defendant leases less space in California than in New York; it leases 1,044,690 square feet in New York compared to 258,174 square feet of property leased in California. (Id. ¶ 7). Finally, defendant earned less income from retail store operations in California (12.8%) than it did in New York (18.2%) and Florida (13.4%). (Id. ¶ 8). Based upon this evidence, defendant has demonstrated that its business activities in California are not significantly larger than in any other state. See Ho v. Ikon Office Solutions, 143 F. Supp. 2d 1163, 1166-67 (N.D. Cal. 2001) (finding no substantial predominance in California where California business activities generated 7.9% of revenue, Texas and Florida generated 5.4% and 5.3% respectively, and remaining revenue was widely distributed among many states); see also Albino v. Standard Ins. Co., 349 F. Supp. 2d 1334, 1337-38 (S.D. Cal. 2004) (finding no substantial predominance in California even though the majority of defendant's income and sale arose from the state because the vast majority of employees and real property was located in Oregon and because, as the most populated state in the union, California will naturally have more gross sales and more customers); Arellano v. Home Depot U.S.A., Inc., 245 F. Supp. 2d 1102, 1106-

07 (finding no substantial predominance in California where there was only 5.8% differential in work force, a relatively even distribution of real property, and the executive and administrative functions took place elsewhere). As such, defendant's principal place of business is not California based upon the "place of operations test."

Moreover, California is not defendant's principal place of business under the "nerve center test." Defendant's executive and administrative functions take place at its headquarters in New York. (Winthrop Decl. ¶ 4). All corporate officers work out of this office and defendant's corporate policies and procedures are made there. (Id.) Corporate functions such as legal, finance, accounting, marketing, and human resources are based primarily in New York. (Id.) Thus, California is not the state where the majority of defendant's executive and administrative functions are performed.

Because defendant has proffered evidence that California is not its principal place of business under either the "place of operations test" or the "nerve center test," and because defendant is a Delaware corporation, Polo has demonstrated by a preponderance of the evidence that it is not a citizen of California for purposes of diversity jurisdiction.

**B. Amount in Controversy**

Plaintiff also contends that the court should remand this matter to state court because defendants have not demonstrated that the amount in controversy exceeds $5,000,000. Specifically, plaintiff contends that although he has alleged that there is a maximum statutory penalty of $1000 under § 1747.08, the section

does not set forth a specific penalty and a plaintiff may be awarded a penalty below the maximum per violation.

Where a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds the statutory minimum (in this case, $5,000,000 per the CAFA). Singer v. State Farm Mut. Auto Ins. Co., 116 F.3d 373, 376 (9th Cir. 1996).[3] The preponderance of the evidence standard means the "defendant must provide evidence establishing that it is '*more likely than not*' that the amount in controversy exceeds that amount." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996) (emphasis added) (citation omitted). Said burden is not "daunting," as courts recognize that under this standard, a removing defendant is *not* obligated to "research, state, and prove the plaintiff's claims for damages." McCraw v. Lyons, 863 F. Supp. 430, 434 (W.D. Ky. 1994).

Nevertheless, a court "cannot base [its] jurisdiction on a [d]efendant's speculation and conjecture." Lowdermilk v. United States Bank Nat'l Ass'n, 479 F.3d 994, 1002 (9th Cir. 2007). Rather, a defendant must set forth the underlying facts supporting its assertion that the amount in controversy exceeds the statutory minimum. Gaus v. Miles, Inc., 980 F.2d 564, 567 (9th Cir. 1992). In addition to the contents of the removal petition, the court considers "summary-judgment-type evidence

---

[3] The CAFA did not shift the burden of proof normally applied to removal of a state action to federal court; under the CAFA, the removing defendant, not the class action plaintiff, continues to bear the burden of proof. Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 678 (9th Cir. 2006).

relevant to the amount in controversy at the time of removal," such as affidavits or declarations. Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004) (internal quotations omitted); Singer, 116 F.3d at 374 ("defense counsel submitted declarations to show that the amount in controversy exceeded $50,000"). A court may also consider supplemental evidence later proffered by the removing defendant, which was not originally included in the removal notice. Cohn v. Petsmart, Inc., 281 F.3d 837, 840 n. 1 (9th Cir. 2002).

In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. Kenneth Rothschild Trust v. Morgan Stanley Dean Witter, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is what amount is put "in controversy" by the plaintiff's complaint, not what a defendant will *actually* owe. Rippee v. Boston Market Corp., 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); see also Scherer v. Equitable Life Assurance Society of the United States, 347 F.3d 394, 399 (2d Cir. 2003) (recognizing that the ultimate or provable amount of damages is not what is considered when determining the amount in controversy; rather, it is the amount put in controversy by the plaintiff's complaint).

Plaintiff's argument that defendant has not established the requisite jurisdictional amount for purposes of the CAFA because the class plaintiffs could be awarded less than the maximum statutory penalty per violation overlooks the critical distinction between the likely recovery per plaintiff and the actual issue before the court, the amount *in controversy* in this

litigation. See Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 448 (7th Cir. 2005) ("The question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties."). Where a statutory maximum is specified, courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met. Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1046 n.3 (9th Cir. 2000) (citing Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1156 (9th Cir. 1998); Davenport v. Mut. Benefit Health and Accident Ass'n, 325 F.2d 785, 787 (9th Cir. 1963)). Moreover, district courts in the Southern District of California and the Central District of California have looked to the statutory maximum of $1000 set forth in § 1747.08 in determining whether the jurisdictional requirements of the CAFA have been met. Saulic v. Symantec Corp., No. 07-CV-610 (C.D. Cal. Dec. 26, 2007) (holding that where plaintiff had pled that damages could be up to the statutory maximum under § 1747.08, defendants must simply show that there are at least 5,001 putative class claims in order to meet the jurisdiction requirements of the CAFA); Romeo v. The Home Depot, No. 06-CV-1505, 2006 U.S. Dist. LEXIS 79881 (S.D. Cal. Oct. 30, 2006) (same).

Plaintiff's complaint alleges that Korn and every other class member "is entitled to civil penalties in amounts up to one thousand dollars ($1,000) per violation." As such, plaintiff has explicitly pled the statutory maximum set forth in § 1747.08. Plaintiff does not stipulate that he will demand less than the

maximum civil penalty.[4] Therefore, in order to demonstrate that the amount *in controversy* meets the CAFA's jurisdictional requirement, defendant need only demonstrate that there are at least 5,001 putative class claims. Defendant has done so. Defendant has submitted the declaration of Jurgens, Director of Sales Audit for defendant, which provides that defendant processed more than 5,000 credit card transactions over the last year in the state of California. (Jurgens Decl. ¶ 3). Thus, defendant has adduced enough evidence to show that the number of class claimants is sufficient to satisfy the CAFA's jurisdictional requirements.

Because plaintiff alleges in his complaint that defendant is liable for up to $1000 per violation of § 1747.08 in the processing of credit card purchases and returns, and because defendant has proffered evidence that it has processed more than 5,000 credit card transactions, Polo has demonstrated by a preponderance of the evidence that the amount in controversy exceeds $5,000,000.

**C. Exceptions to the CAFA**

Finally, plaintiff contends that the court should remand this matter to state court because defendants have not demonstrated that the "home state" and "local controversy" exceptions to the CAFA do not apply to this action.

---

[4] Plaintiff cannot avoid satisfaction of the amount in controversy by arguing that the class plaintiffs *may* be awarded less than the statutory maximum. The critical inquiry is the amount placed in controversy by the allegations in plaintiff's complaint.

Although the removing party bears the burden of establishing federal jurisdiction under the CAFA, the party seeking remand bears the burden of proving the applicability of any express statutory exception. Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1023-24 (9thCir. 2007). The Ninth Circuit has recently noted that it is in agreement with all other Circuits to address the issue, in holding that the party seeking remand must demonstrate the applicability of the "home state" and "local controversy" exception to the CAFA. Id. (citing Evans v. Walt. Indus., Inc., 449 F.3d 1159, 1164-65 (11th Cir. 2006); Frazier v. Pioneer Americas LLC, 455 F.3d 542, 546 (5th Cir. 2006); Hart v. FedEx Ground Package Sys. Inc., 457 F.3d 675, 680-81 (7th Cir. 2006)). Therefore, it is plaintiff's burden, not defendant's, to demonstrate that an exception applies to the CAFA.

Moreover, the "home state" and "local controversy" exceptions to the CAFA apply only if "the primary defendants are citizens of the State in which the action was originally filed," 28 U.S.C. § 1332(d)(3), or if at least one defendant "is a citizen of the State in which the action was originally filed," 28 U.S.C. § 1332(d)(4). Defendant Polo is the only named defendant in this action. As set forth above, defendant has demonstrated that it is not a citizen of California for purposes of diversity jurisdiction. Therefore, neither of the statutory exceptions asserted by plaintiff apply.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion to remand is DENIED.

/////

EXHIBIT E
PAGE 33

IT IS SO ORDERED.

DATED: February 27, 2008

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JOE ROMEO, individually, and CLIFFORD KIDD, individually, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

THE HOME DEPOT U.S.A., INC., et al.,

Defendants.

CASE NO. 06CV1505 IEG (BLM)

**ORDER (1) DENYING PLAINTIFFS' MOTION TO REMAND and (2) DENYING PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS**

(Doc. No. 8.)

Presently before the Court is a motion to remand brought by Joe Romeo and Clifford Kidd ("plaintiffs"). (Doc. No. 8.) For the following reasons, the Court denies plaintiffs' motion to remand and denies plaintiffs' request for attorney's fees and costs.

**BACKGROUND**

**A. Factual History**

On or about January 9, 2006 plaintiff Kidd entered a Home Depot store within San Diego County to return an item previously purchased with a credit card. (Compl. ¶ 19.) Plaintiff Kidd

presented a Home Depot employee with a receipt of his previous purchase. (Id. ¶ 21.) A Home Depot employee printed out a credit card transaction form, which contained a preprinted space to fill in the cardholder's telephone number. (Id. ¶ 22.) "Believing that he was required to do so in order to complete the transaction, [plaintiff] . . . then wrote his telephone number on the credit card transaction form in the space provided . . . signed the form and then handed it back" to the employee. (Id. ¶ 23.) The employee entered the information into the cash register and finished the transaction. (Id. ¶ 24.)

The exact same facts took place with respect to plaintiff Romeo at another Home Depot store in San Diego County, on or about May 23, 2006. (Id. ¶¶ 13-18.)

**B. Procedural History**

On June 20, 2006, plaintiffs filed their complaint in San Diego Superior Court alleging, on behalf of themselves and others similarly situated in California, a violation of the Song-Beverly Credit Card Act. Cal. Civ. Code §§ 1747 et seq.[1] Plaintiffs seek statutory penalties; preliminary and permanent injunctions prohibiting defendants from using a credit card form with a preprinted space for the cardholder's telephone number, and ordering defendants to change their credit card forms; attorneys' fees; costs of suit; and prejudgment interest. (Compl. at Prayer for Relief.)

On July 26, 2006, defendants removed the case to this Court. (Doc. No. 1.) On August 29, 2006, plaintiffs filed a motion to remand. (Doc. No. 8.) On September 11, 2006, defendants filed their opposition. (Doc. No. 11.) On September 18, 2006 plaintiffs filed their reply. (Doc. No. 12.) On September 21, 2006, this Court ordered defendants to submit supplemental briefing and evidence on the issue of the amount in controversy in the litigation. (Doc. No. 13.) On September 28, 2006, defendants filed their supplemental memorandum along with the declaration of Kim Sentovich. (Doc Nos. 14-15.) The matter is now fully briefed, and the Court finds it appropriate for disposition without oral argument pursuant to Civil Local Rule 7.1(d)(1).

---

[1] California Civil Code § 1747.08(a)(3) (Deering 2006) provides: "no . . . corporation that accepts credit cards for the transaction of business shall . . . :

(3) Utilize, in any credit card transaction, a credit card form which contains preprinted spaces specifically designed for filling in any personal identification information of the cardholder."

The statutory definition of "personal identification information" includes the cardholder's telephone number. Id. § 1747.08(b).

EXHIBIT E
PAGE 36

**DISCUSSION**

**A. Legal Standard**

An action is removable to federal court if it might have been brought there originally. 28 U.S.C. § 1441(a). Pursuant to the Class Action Fairness Act ("CAFA"), Pub. L. 109-2, 119 Stat. 4 (2005), district courts have jurisdiction over class actions in which the amount in controversy exceeds $5 million in the aggregate and any one member of the plaintiff class is diverse from any defendant. 28 U.S.C. § 1332(d)(2). "Under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." Abrego v. Dow Chem. Co., 443 F.3d 676, 685 (9th Cir. 2006). However, the CAFA removal provision "should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." S. Rep. No. 109-14, at 43 (2005), as reprinted in 2005 U.S.C.C.A.N. 3, 41. The district court should "interpret[] expansively" its power to aggregate individual class members' claims, and, where the court is in doubt whether the aggregated claims exceed $5 million, "the court should err in favor of exercising jurisdiction over the case." Id. at 42, as reprinted in 2005 U.S.C.C.A.N. at 40.

The district court must first consider whether it is "facially apparent" from the complaint that the jurisdictional amount in controversy requirement is met. Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 376 (9th Cir. 1997). When the complaint is not clear, "the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003). Establishing the amount in controversy requires more than a "mere averment" that the requisite amount is at stake. Gaus v. Miles, Inc., 980 F.2d 564, 567 (9th Cir. 1992). Rather, defendants are expected to put forth "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Valdez v. Allstate Ins. Co., 373 F.3d 1115, 1117 (9th Cir. 2004) (internal citations omitted). The Court may consider the defendant's notice of removal and further pleadings to determine whether the defendant has properly substantiated the amount in controversy. Cohn v. Petsmart Inc., 281 F.3d 837, 840 n.1. (9th Cir. 2002).

**B. Analysis**

A violator of California Civil Code § 1747.08 "shall be subject to a civil penalty not to exceed

two hundred fifty dollars ($250) for the first violation and one thousand dollars ($1,000) for each subsequent violation[.]" § 1747.08(e). The amount of statutory damages in controversy is "facially apparent" from the complaint: plaintiffs seek the statutory maximum. (Compl. ¶¶ 30, 38 (plaintiffs and class members "are entitled to civil penalties in amounts of up to one thousand dollars ($1,000) per violation")).

What is not "facially apparent" from the complaint–and, therefore, what defendants must prove by a preponderance of the evidence–is the number of alleged violations during the year prior to the filing of the complaint.[2] To establish the number of alleged violations, defendants have included with their supplemental brief the declaration of Kim Sentovich, a regional vice-president with Home Depot. (See Sentovich Decla. in Opp. to Motion ¶ 1.) Ms. Sentovich supervises operations of one third of California's Home Depot retail stores, and is familiar with the operations of other Home Depot stores not directly under her supervision. (Id.) Under penalty of perjury, Ms. Sentovich declares, "Home Depot's California stores processes [sic] an average of 60,000 credit card refund transactions per year."[3] (Id. ¶ 3.) If plaintiffs receive the statutory maximum for all of these transactions, the amount in statutory damages in controversy would equal nearly $60 million.[4] (Supp. Opp., at 2.) Even without considering the plaintiffs' other forms of requested relief (e.g., injunction, attorneys' fees), defendants have proven plaintiffs' complaint satisfies CAFA's $5 million aggregate amount in

---

[2] Plaintiffs define the class as all persons within the year prior to the filing of the complaint who entered into credit card refund transactions in which defendants used a form with a preprinted space for the cardholder's telephone number. (Compl. ¶ 25.) Plaintiffs also define a "subclass" of all class members who actually provided their telephone number on the credit card refund form. (Id.) However, based on the language of the statute, the subclass appears to be irrelevant because the statutory violation is the utilization of a form with a preprinted space for personal identification information. See Cal. Civ. Code § 1747.08(a)(3) (omitting any requirement that the recipient of the form actually provide the personal identification information).

[3] Ms. Sentovich bases her testimony on the multiplication of the number of Home Depot stores in California (approximately two hundred) times the number of credit card refund transactions that each store processes annually (at least three hundred).

[4] The total amount of statutory damages is slightly less than $60 million because plaintiffs would receive only $250 for the first violation.

controversy.[5]

Plaintiffs cannot avoid satisfaction of the amount in controversy by alleging it would be "far from reasonable to infer that a court or jury" would award the statutory maximum. (Reply, at 2-3.) Where plaintiffs pray for statutory penalties "up to" the statutory maximum of $1,000 per violation, this Court would remand for lack of subject matter jurisdiction only if it "'appear[ed] to a legal certainty that the claim is really for less than the jurisdictional amount.'" Crum v. Circus Circus Enters., 231 F.3d 1129, 1131 (9th Cir. 2000) (quoting Budget Rent-A-Car, Inc. v. Higashiguchi, 109 F.3d 1471, 1473 (9th Cir. 1997) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938))). While plaintiffs may not eventually receive the statutory maximum for each violation, plaintiffs have not established "to a legal certainty" that the aggregate amount in controversy–including statutory damages, attorneys' fees, and value of the injunction–would fall below $5 million.

2. Attorney's Fees and Costs

Plaintiff requests attorney's fees and costs as provided for by law. See 28 U.S.C. § 1447 (c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal"). Having denied plaintiffs' motion to remand, the Court obviously believes defendants had "an objectively reasonable basis" to remove this case. See Martin v. Franklin Capital Corp., 546 U.S. 132, 126 S. Ct. 704, 711 (2005); Patel v. Del Taco, Inc., 446 F.3d 996, 999 (9th Cir. 2006) (denying attorney's fees when the removing party had an "objectively reasonable basis").

**CONCLUSION**

For the foregoing reasons, the Court **DENIES** plaintiffs' motion to remand and **DENIES** plaintiffs' request for attorney's fees.

**IT IS SO ORDERED.**

**DATED: October 30, 2006**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

[5] Because the Court bases its denial of plaintiffs' motion to remand on the Sentovich declaration, the Court denies plaintiffs' request for "immediate discovery" on defendants' representations in their Notice of Removal.

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT
DEC 2 6 2007
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

DON SAULIC, individually and on behalf of others similarly situated,

Plaintiff,

v.

SYMANTEC CORPORATION, et al.,

Defendants.

SA CV 07-610 AHS (PLAx)

ORDER DENYING PLAINTIFF'S MOTION TO REMAND

I.

**PROCEDURAL BACKGROUND**

On April 27, 2007, plaintiff Don Saulic ("plaintiff") filed a Complaint in the Orange County Superior Court. On May 25, 2007, defendant Symantec Corporation, et al. ("defendants"), filed a Notice of Removal in this Court asserting diversity jurisdiction under the Class Action Fairness Act ("CAFA") based on 28 U.S.C. § 1332(d).

On June 22, 2007, plaintiff filed a Motion to Remand to State Court and, If Appropriate to Grant Discovery Pending a Ruling ("Motion to Remand"). Defendant Symantec Corporations filed

Opposition on July 23, 2007. The same day, defendant Digital River Inc., filed a Motion of Joinder in Defendant Symantec Corporation's Opposition. On July 30, 2007, plaintiff filed a reply thereto. The Court took the matter under submission on August 31, 2007.

II.

**SUMMARY OF THE COMPLAINT**

Defendants Symantec Corporation and Digital River, Inc. are corporations doing business in the State of California. (Compl. ¶¶ 2-3.) Plaintiff, an individual, is a resident of the State of California.

Plaintiff brings the action on behalf of himself and others similarly situated in North and/or South America who have made purchases of goods and/or services from defendants within the prior three years or applicable statute of limitations period. The proposed class is limited to those persons (1) who downloaded defendants' products from the internet without such purchase being sent to them; (2) used a credit car as payment; (3) as to whose purchase transaction(s) California law applies; and, (4) from whom defendants required or requested personal identifying information and/or used a credit card form in violation of California Civil Code section 1747.08 ("section 1747.08").

Plaintiff alleges the following violations of Section 1747.08: (1) defendants utilize credit card forms with preprinted spaces specifically designed for filling in personal identifying information of the cardholder in violation of section 1747.08(a)(3); (2) defendants request or require personal identifying information as a condition of accepting credit card payments in violation of section 1747.08(a)(1) and (2); and, (3)

these violations are ongoing.

Plaintiff requests the following relief: (1) civil penalties pursuant to Section 1747.08(e) "not to exceed two hundred fifty dollars ($250.00) for the first violation and one thousand dollars ($1,000.00) for each subsequent violation; (2) entry of a preliminary injunction followed by a permanent injunction to bar defendants' continued violations of section 1747.08; and, (3) attorney's fees and costs.

**III.**

**SUMMARY OF PARTIES' CONTENTIONS**

**A. Motion for Remand**

Plaintiff contends the Court should remand the action because defendants fail to prove diversity jurisdiction and/or that the Complaint satisfies the amount in controversy requirement.

Specifically, defendants do not offer sufficient proof the aggregate amount in controversy for the proposed class exceeds $5,000,000 as required by CAFA. See 28 U.S.C. § 1441(a) and § 1332(d). The single declaration suggesting Symantec has processed at least 5,001 credit card transactions since April 27, 2006, is insufficient. First, the declaration does not establish that these transactions did not also include the delivery of a physical product as part of the transaction. The absence of delivery is necessary for a section 1747.08 claim. Second, the declaration does not establish how many of the purposed transactions involved requests for and/or requirements of personal identifying information in exchange for the product. Again, such requests and/or requirements are necessary for a section 1747.08 claim. Third, the Notice of Removal presumed the maximum civil

penalty of $1,000 will be awarded and therefore presumed that if there are 5,001 transactions, the amount in controversy will exceed $5,000,000. However, the California Supreme Court has ruled that a $1,000 penalty under Section 1747.08 is discretionary. See Linder v. Thrifty Oil, 23 Cal. 4th 429, 447 (2000). Defendant has offered no evidence that the maximum penalty "might reasonably be awarded."

CAFA has not changed the "longstanding rule" that the party seeking removal to federal court bears the burden of establishing federal jurisdiction. Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 686 (9th Cir. 2006).

Because plaintiff does not specify an amount of damages, defendants must establish the jurisdictional amount in controversy by a preponderance of the evidence. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996). The mere "legal possibility" that the amount in controversy is jurisdictionally sufficient is "clearly inconsistent with the limits which Congress has placed on both removal and diversity jurisdiction." Id. at 403. Rather, defendants bear the burden of showing it is "'more likely than not' that the amount in controversy exceeds" the amount necessary to establish diversity jurisdiction. Id. at 404 citing Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1357 (11th Cir. 1996). This preponderance burden strikes "'[t]he proper balance between a plaintiff's right to choose his forum and a defendant's right to remove, without unnecessarily expanding federal diversity jurisdiction.'" Id., citing Tapscott 77 F.3d at 1357.

In general, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles Inc., 980 F.2d 564, 566 (9th Cir. 1992).

see also Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996).

For purposes of diversity jurisdiction, discretionary civil penalties are construed like punitive damages allegations. Brady v. Mercedes-Benz USA, Inc., 243 F. Supp. 2d 1004, 1009 (N.D. Cal. 2003); Suman v. Superior Court, 39 Cal. App. 4th 1309, 1320-21 (Cal. Ct. App. 1995). Recent district court decisions in this circuit suggest that where removal is requested, diversity jurisdiction will not lie based on prospective or speculative punitive damages awards. Conrad Associates v. Hartford Accident & Indemnity Co., 994 F. Supp. 1196, 1198 (N.D. Cal. 1998); Burk v. Medical Sav. Ins. Co., 348 F. Supp. 2d 1063, 1069 (D. Ariz. 2004). Decisions in other circuits reflect the same view. See Brown v. Jackson Hewitt, Inc., 2007 U.S. Dist. LEXIS 13328 (D. Ohio 2007); Bower v. Am. Cas. Co. of Reading Pa., 2001 U.S. App. LEXIS 18053, 8-11 (6th Cir. 2001); Bush v. GE Transp., 2006 U.S. Dist. LEXIS 12821 (N.D. Ohio 2006); Midwest Motor Supply Co. v. Addis, 2006 U.S. Dist. LEXIS 4663 (S.D. Ohio 2006).

Conrad Associates suggests that when a complaint is initially filed in state court, defendants cannot claim the amount in controversy meets the federal standard for diversity "simply by pointing out that the complaint seeks punitive damages and that any damages awarded under such a claim could total a large sum of money." 994 F. Supp. at 1201. Rather, the court must find it "more likely than not that a potential punitive damages award could sufficiently increase the amount in controversy to meet the jurisdictional requirement." Id.

Defendants also insufficiently identify class members. Based on the evidence offered, there is no way to determine whether

5,001 transactions (1) were made online; (2) for downloaded software; (3) with a credit card; (4) required that personal identifying information be divulged in violation of Section 1747.08; and, (5) were not orders for delivery. The number in the class is presently speculative. Accordingly, the amount of statutory penalties that might be imposed is "mere guesswork."

If the requisite amount in controversy is established, the Court should permit discovery into whether more than one third of the potential class members are California residents thereby defeating the diversity requirement of CAFA. 28 U.S.C. § 1332(d)(3).

**B. Opposition**

Defendants contend jurisdiction is proper because they have offered conclusive evidence to show (1) there were approximately 3,180,000 online subscription renewal purchases by U.S. customers between July 1, 2006, and May 25, 2007; (2) these customers would have encountered a renewal screen in which personal identifying information would have been requested; (3) less than 5% of the transactions resulted in the delivery of physical products; and, (4) more than 90% of the purchases were with a credit card. (Declaration of Glenn Taylor Decl. ("Taylor Declaration" at ¶¶ 4-5.) Ultimately, the evidence supports finding at least 2,718,900 putative class claimants. (Taylor Decl. at ¶ 6.) Plaintiff's prayer for relief is for the maximum civil penalty of $1,000. Therefore, it is clear the amount in controversy exceeds $5,000,000, satisfying CAFA.

When the amount in controversy is not specified in plaintiff's complaint, "the defendant seeking removal must prove by

a preponderance of evidence the amount in controversy requirement has been met." Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994, 998 (9th Cir. 2007) (quotation marks omitted). Here, a particular amount of damages was specified by plaintiff: "statutory penalties pursuant to California Civil Code section 1747.08(e) in the amount of $1,000.00 for Plaintiff and for each person similarly situated." (Compl. at Prayer ¶ 1(a).) Having established through the Taylor declaration a minimum number of putative class claimants meeting plaintiff's definition, it is now plaintiff's burden to establish to "a legal certainty" that the jurisdictional minimum cannot be met. Lowdermilk, 479 F.3d at 998, 999.

In his complaint, plaintiff seeks the full statutory penalty of $1,000.00. This is a definite prayer for relief and, therefore, a definite amount in controversy. Because the complaint was filed in state court, plaintiff's damages calculations should be given heightened deference. Sanchez, 102 F.3d at 402 ("[Where the] plaintiff himself has placed the requisite jurisdictional amount in controversy by requesting damages in excess of the jurisdictional amount, . . . it would, of course, make sense to accord plaintiff's own claim some weight in determining the actual amount in controversy.").

Courts as a matter of law, calculate the amount in controversy based upon the maximum amount of civil penalties available to plaintiff. See e.g., Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 448 (7th Cir, 2005); Romo v. FFG Ins. Co., 397 F. Supp. 2d 1237, 1240 (C.D. Cal. 2005); Brady, 243 F. Supp. 2d at 1009. In accord with Brill, Romo, and Brady, Lowdermilk also considered the maximum statutory penalty available for the number

of putative class claimants the defendant could prove. 479 F.3d at 1001. Ultimately, regardless of whether the case was originally brought in state or federal court, when civil penalties are involved, courts calculate the amount in controversy based on the full potential recovery available to plaintiff. See e.g., Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1046 n.3 (9th Cir. 2000); Rosen v. Chrysler Corp., 205 F.3d 918, 922 (6th Cir. 2000); St. Paul Reinsurance Co., Ltd. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1998); Miera v. Dairyland Ins. Co., 143 F.3d 1337, 1340 (10th Cir. 1998); Evans v. Yum Brands, Inc., 326 F. Supp. 2d 214, 222 (D.N.H. 2004).

Courts do not treat civil penalties the same as punitive damages in calculating the jurisdictional amount in controversy. While the Brady court acknowledged a similarity between civil penalties and punitive damages, it ultimately included the maximum civil penalty in calculating the amount in controversy. 243 F. Supp. 2d at 1009. Moreover, although plaintiff argues civil penalties are presumptively speculative and, therefore, akin to punitive damages, plaintiff at the same time ascribes a value of $1,000 to every alleged violation.

The Court should reject plaintiff's discovery request. Defendants have offered proof that in a given month only 11.5% of Symantec's online subscription renewal sales to United States customers are made to California residents. (Taylor Decl. at ¶ 7.)

**C. Plaintiff's Reply**

Where allegations of the amount in controversy are "unclear," the burden rests with removing defendant to prove the jurisdictional amount by a preponderance of evidence. See Sanchez,

102 F.3d at 403-04. Defendants have failed to offer evidence that the trial court will award a particular sum between zero and $1,000 per violation. Plaintiff's complaint does not demand relief of $1,000 per violation. Rather, plaintiff simply demands relief "not to exceed" the statutory maximum of $1,000. $1,000 is a "potential ceiling" pursuant to section 1747.08(e) and is itself discretionary.

"[I]f there is any doubt" regarding federal jurisdiction, removal must be rejected. Gaus, 980 F.2d at 566; Duncan, 76 F.3d at 1485. As a matter of federalism the Court must closely consider whether removal is proper.

The potential value of an award does not establish the amount in controversy. Conrad Associates, 994 F. Supp. at 1198 (citing Gaus, 980 F.2d at 567). Moreover, where a civil penalty contains a ceiling, it will be deemed "discretionary." Suman, 39 Cal. App. 4th at 1315, 1320-21. Defendants must offer evidence as to how the trial court would assess such a discretionary penalty. Mere numbers of downloads, without evidence to suggest that any amount other than zero will be awarded, is not enough.

Defendants improperly attempt to shift the burden of proving the amount to plaintiff. Here plaintiff has not made an express allegation. Rather, there is only the "mere possibility that the jurisdictional amount is satisfied." Sanchez, 102 F.3d at 403, 404.

Plaintiff's discovery request is withdrawn based on defendants' verified disclosures that California residents represent only 11% of its sales.

//

## IV.

## DISCUSSION

### A. Legal Standard

A suit may be removed to federal court by the defendant if the federal court would have had original subject matter jurisdiction over that suit. 28 U.S.C. § 1441(a). Upon a motion to remand by plaintiff, defendant bears the burden of establishing proper removal and federal jurisdiction. Gaus, 980 F.2d at 566. To protect the jurisdiction of state courts, removal statutes should be strictly construed in favor of remand. Harris v. Bankers Life and Cas. Co., 425 F.3d 689, 698 (9th Cir. 2005) citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); Duncan, 76 F.3d at 1485.

Pursuant to CAFA, district court's have "original jurisdiction" over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [the action] is a class action in which the parties satisfy, among other requirements, minimal diversity." Abrego Abrego, 443 F.3d at 680 (quoting 28 U.S.C. § 1332(d)). The statute expressly requires the aggregation of claims of individual putative class members to determine the amount in controversy. 28 U.S.C. § 1332(d)(6).

### B. Removing Party's Burden of Proof

Depending on the claims in the complaint, the Ninth Circuit has identified "at least three different burdens of proof which might be placed on a removing defendant" attempting to prove federal jurisdictional requirements have been met. Guglielmino v. McKee Foods Corp., 2007 WL 2916193 at *3 (9th Cir. Oct. 9, 2007).

First, when a state court complaint "alleges on its face an amount in controversy sufficient to meet the federal jurisdictional threshold," then the requirement is "presumptively satisfied" unless plaintiff can show "to a legal certainty" they cannot actually recover that amount. Id., citing Sanchez, 102 F.3d at 398. Second, when the amount in controversy is "unclear or ambiguous" on the face of the state court complaint, defendant must show by a "preponderance of the evidence" that the amount in controversy exceeds the jurisdictional amount. Id., citing Sanchez, 102 F.3d at 404. This standard also applies to state court complaints that do not specify a particular amount in controversy and are removed subject to CAFA. Id., citing Abrego Abrego, 443 F.3d at 683. Third, in the CAFA context, when a state court complaint affirmatively alleges an amount in controversy less than the jurisdictional threshold, defendants must prove "with legal certainty" that the jurisdictional threshold under CAFA is met. Id., citing Lowdermilk, 479 F.3d at 994.

Here, the state court complaint does not specify a particular amount of damages. It merely prays for 1) statutory penalties "in the amount of $1,000 for Plaintiff and each person similarly situated"; 2) attorney's fees; and, 3) an injunction barring continued violations of section 1747.08(e).

**1. Complaint Guides Burden of Proof**

In order to determine the amount in controversy alleged and thereby assign the proper burden of proof, courts look solely to the face of the complaint. Id. (noting the "nature of plaintiff's complaint" determines the burden of proof and the court "must as a threshold matter determine precisely what Guglielmino's

complaint alleged").

Here, plaintiff's prayer for relief suggests a specific amount of damages for each plaintiff, but it does not suggest the number of putative class members for which relief might be available. Therefore, the face of the complaint does not disclose the total damages.

Defendants' Notice of Removal asserts that "it is evident that plaintiffs here seek damages in excess of $5,000,000" based on the civil penalties of $1,000 for each violation alleged in the complaint. Defendants go on to "concede[]that at least 5,001 individuals within the United States have purchased food or services using a credit card between the Online Store and the Renewal Center since April 27, 2006." (Notice of Removal at ¶ 7). Accordingly, defendants would the burden to plaintiff to establish to a "legal certainty" that the jurisdictional minimum cannot be met.

In the face of a motion to remand, defendants' suggestion that the allegations in the Notice of Removal satisfy the amount in controversy fails. Defendants offer no support for their contention that the burden of proof should be determined from both the allegations in the complaint and defendants' assertions regarding those allegations. On the contrary, in determining the amount in controversy, the Court should consider the prayer for relief and "the specific total amount in controversy" alleged therein. Guglielmino, 2007 WL 2916193 at *4 (finding the prayer for relief "uncertain" where a particular number was not specified and therefore requiring the preponderance standard established by Sanchez). Like the allegation rejected by the Ninth Circuit in

EXHIBIT E
PAGE 51

Gaus, defendants' assertion that the amount in controversy exceeds $5,000,000 is merely a "'magical incantation'" and "neither overcomes the 'strong presumption' against removal jurisdiction, nor satisfies [defendants'] burden of setting forth, in the removal petition itself, the underlying facts supporting its assertion that the amount in controversy" meets the jurisdictional requirement. Gaus 980 F.2d at 567, citing Garza v. Bettcher Indus., Inc., 752 F. Supp. 753, 763 (E.D. Mich. 1990).

In fact, the preponderance standard is reserved for situations where, as here, a plaintiff "'seeks no specific amount in damages,' and a court is forced to look beyond the complaint to determine whether the suit meets the jurisdictional requirements." Lowdermilk, 479 F.3d at 998, citing Abrego Abrego, 443 F.3d at 688.

Here, the complaint does not suggest a specific set of damages beyond civil penalties of $1,000 per plaintiff. When a complaint filed in state court does not specify the amount of damages sought and is removed subject to CAFA, the burden is on the removing defendant to prove by a preponderance of the evidence that the amount in controversy requirement has been met. Abrego Abrego, 443 F.3d at 683, citing Sanchez, 102 F.3d 398 at 398; accord Guglielmino, 2007 WL 2916193 at *3. Because the complaint does not suggest the number of putative class claimants, it is the defendants' burden to show by a preponderance of the evidence at least 5,001 putative class claimants such that the amount in controversy exceeds $5,000,000.

**2. Civil Penalties**

Plaintiff suggests the Court should not presume civil penalties of $1,000 per class member. Rather, plaintiff argues

that a "range" of penalties from zero to $1,000 are available to class members and defendants must offer some proof of the amount likely to be awarded.

This argument is rejected. First, as defendants note, plaintiff's argument is inconsistent with plaintiff's prayer for relief appearing in the complaint. Rather than claiming a range of penalties, plaintiff demands judgment of "statutory penalties . . . in the amount of $1,000.00 for Plaintiff and each person similarly situated." (Complaint, Prayer at ¶1a.) The amount in controversy is determined by the amount demanded in good faith when the complaint is filed, rather than the sum ultimately found to be due. St. Paul Mercury Indem. Co., 303 U.S. 283, 289-290 (1938). While the statute allows for a jury to find in plaintiff's favor but award less than the statutory maximum, there is no need to speculate as to such outcomes.

Here, the amount in controversy per class member is not subject to debate. Plaintiff could have "remained silent or ambiguous on one or more of the ingredients needed to calculate the amount in controversy," thereby requiring the removing party to "show the stakes of litigation . . . given plaintiff's actual demand." Lowdermilk, 479 F.3d at 999, citing Brill, 427 F3d. at 449. Instead plaintiff chose to specify $1,000 as the recovery demanded. Since individual claims are aggregated under CAFA, plaintiff's prayer for relief is only indefinite as to the number of putative class members.

Second, plaintiff argues discretionary civil penalty awards cannot be the basis for satisfying the amount in controversy requirement. Plaintiff would have the Court construe discretionary

EXHIBIT E
PAGE 53

civil penalties the same as speculative punitive damages claims and find that the likely amount of such penalties requires evidence of the likelihood of recovery of a certain amount.

While plaintiff would require defendants to offer proof of likely recovery per plaintiff, the issue before the Court is simply the amount "in controversy" between the parties. Brill, 427 F.3d at 448. Here, contrary to the cases cited by plaintiff, that amount on a per class member basis is clearly identified in the complaint as $1,000. Such recovery is also consistent with the statutory maximum. See section 1747.08.

Plaintiff likewise would apply the reasoning in Conrad Associates and require defendants to suggest a specific likely amount of recovery. 994 F. Supp. at 1201. Unlike the present case, the Conrad Associates plaintiff simply demanded punitive damages without offering an amount in the complaint. Rejecting defendants' claim that punitive damages "could total a large sum of money" and thereby satisfy the amount in controversy, the court noted that such a claim without "*facts* that would support an award of punitive damages" was insufficient. Id.

Where a statutory maximum is specified, courts will consider the maximum statutory penalty available in the punitive damages claim to determine if the jurisdictional requirement is met. See Brady 243 F. Supp. at 1009 (finding "good reason to include the Song-Beverly Act's civil penalty of up to two times the amount of actual damages in the amount in controversy"); Chabner 225 F.3d 1046 (treble damages authorized by state statute taken into account when determining amount in controversy). While in Conrad Associates there was no reliable basis for finding that

punitive damages would sufficiently increase the amount in controversy to meet the jurisdictional requirement, there was also no specific claim for an amount of punitive damages in the complaint, the relevant statute, or offered in argument by defendants.

Here, the maximum civil penalty is identified in the statute and the same amount ($1,000.00) is requested by plaintiff in the complaint. Moreover, plaintiff does not stipulate that he will demand less than the maximum civil penalty. As a result, defendants must simply show there are at least 5,001 putative class claims in order to prove the amount in controversy exceeds $5,000,000 and therefore meets CAFA's jurisdictional requirement.

**C. Putative Class Size**

Having determined that the amount in controversy per putative class member is $1,000 and that defendants bear the burden of showing by a "preponderance" the amount in controversy is satisfied, the Court now considers defendants' proof of the size of the putative class set out in the Taylor declaration.

The preponderance standard requires defendants to offer evidence "that it is 'more likely than not' that the amount in controversy exceeds" $5,000,000. See Sanchez, 102 F.3d 398 at 404. Thus, the Court must determine whether the Taylor declaration establishes that it is "more likely than not" the putative class will exceed 5,001 members.

**D. Sufficient Evidence Under CAFA**

Based on plaintiff's complaint, class members must satisfy the following criteria: (1) made an online purchase from defendants during the class period; (2) made the purchase using a

prohibited credit card form; (3) downloaded the purchase without having it sent to them; and, (4) had their personal information requested or required in order to complete the transaction.

Taylor, Senior Director, Global Online Sales for Symantec, asserts that he has reviewed the relevant business records. Based on his review, "in excess of 5001 credit-card purchases" "not involving physical delivery of purchased product" occurred during the class period. (Taylor Decl. ¶ 1,5.) Specifically, Taylor notes that from July 1, 2006, through May 25, 2007, there were in excess of 3.18 million online Symantec subscription renewal purchases by U.S. customers of which less than 5% involved physical delivery and approximately 90% were credit card purchases. (Id. at ¶ 6.) To prove such renewals required customers to fill out a form covered by section 1747.08, Taylor attaches an example of an online renewal form.

In support of his motion, plaintiff argues Taylor's declaration appended to the Notice of Removal is insufficient because the absence of delivery is not declared and there is no declaration as to whether the personal information was requested in exchange for the product. Although Taylor's declaration of July 24, 2007, filed in opposition to the motion addresses these questions, in reply, plaintiff offers no response. In fact, plaintiff withdraws his discovery request based on defendants' disclosure in the Taylor declaration that California resident represent only 11.5% of the class. (Taylor Decl. ¶ 7.)

Requiring the removing party to show by a preponderance that the jurisdictional requirement has been satisfied "strikes the proper balance between a plaintiff's right to choose his forum and

a defendant's right to remove without unnecessarily expanding federal diversity jurisdiction." Sanchez, 102 F.3d 398 at 404. citing Tapscott, 77 F.3d at 1357. A court may "require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Singer 116 F.3d at 377, citing Gaus, 980 F.2d at 1335. It may also exercise its discretion to accept "formal judicial admissions." Id. at 376. In contrast, where defendants fail to offer "any pleading, evidence, or admission that establishes that it is more likely than not that jurisdiction lies," the Ninth Circuit has found it "well within the court's discretion to remand to state court . . . with the knowledge that later-discovered facts may prompt a second attempt at removal." Abrego Abrego, 443 F.3d at 691.

Taylor's July 24, 2007 declaration adduces enough evidence to show that the number of class claimants is sufficient to satisfy CAFA, namely, that in excess of 5001 former customers are "more likely than not" putative class claimants. This declaration coupled with plaintiff's claim for the maximum statutory civil penalty of $1,000 is sufficient to meet CAFA's amount in controversy requirement of at least $5,000,000.

//

//

//

//

//

//

//

//

V.

**CONCLUSION**

For the foregoing reasons, the Court finds that remand is not appropriate. Plaintiff's motion to remand is therefore denied.

IT IS SO ORDERED.

IT IS FURTHER ORDERED the Clerk shall serve a copy of this Order on counsel for all parties in this action.

DATED: December 26, 2007.

ALICEMARIE H. STOTLER
CHIEF U.S. DISTRICT JUDGE

S:\AHS\2MBM\Formal Orders\cv 07-610.Saulic v. Symantec.Remand.MBM-CJV-AHS.wpd 19

EXHIBIT E
PAGE 58

EXHIBIT F

# EXHIBIT F

WILLIAM N. KAMMER [SBN 53848]
wkammer@swsslaw.com
ALISON L. PIVONKA [SBN 156977]
apivonka@swsslaw.com
SOLOMON WARD SEIDENWURM & SMITH, LLP
401 B Street, Suite 1200
San Diego, California 92101
Telephone: (619) 231-0303
Facsimile: (619) 231-4755

Attorneys for Defendant
COLDWATER CREEK INC.

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SAN DIEGO**

| | |
|---|---|
| SUSAN E. MASSEY, on behalf of herself and all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COLDWATER CREEK, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. 37-2008-00085040-CU-BT-CTL<br><br>Complaint Filed: June 3, 2008<br>I/C Judge: Joan M. Lewis<br>Dept.: 65<br><br>**NOTICE OF FILING REMOVAL** |

TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on July 7, 2008, Defendant Coldwater Creek Inc. filed its Notice of Removal in the office of the Clerk of the United States District Court for the Southern District of California. Exhibit A is a copy of that Notice but without its exhibits because the exhibits are all of the pleadings that are already a part of this Court's file.

DATED: July 7, 2008

SOLOMON WARD SEIDENWURM & SMITH, LLP

By: [signature]
WILLIAM N. KAMMER
ALISON L. PIVONKA
Attorneys for Defendant
COLDWATER CREEK INC.

**EXHIBIT F**
**PAGE 59**

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FILED

08 JUL -7 PM 3:40

'08 CV 1208 L CAB

**I. (a) PLAINTIFFS**
SUSAN E. MASSEY,

**DEFENDANTS**
COLDWATER CREEK, INC.

(b) County of Residence of First Listed Plaintiff ~~Unknown, but in CA~~ San Diego Ca. MTF
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
James R. Patterson
Harrison Patterson & O'Connor, LLP
402 West Broadway, 29th Floor
San Diego, CA 92101
(619) 756-6990

Attorneys (If Known)
William N. Kammer
Solomon Ward Seidenwum & Smith, LLP
401 B Street, Suite 1200
San Diego, CA 92101
(619) 231-0303

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [■] 2 (MTF) | Incorporated and Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury

PERSONAL INJURY
- [ ] 362 Personal Injury - Med. Malpractice
- [ ] 365 Personal Injury - Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 444 Welfare
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 440 Other Civil Rights

**PRISONER PETITIONS**
- [ ] 510 Motion to Vacate Sentence

Habeas Corpus:
- [ ] 530 General
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

**FORFEITURE/PENALTY**
- [ ] 610 Agriculture
- [ ] 620 Other Food & Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 R.R. & Truck
- [ ] 650 Airline Regs.
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 730 Labor/Mgmt. Reporting & Disclosure Act
- [ ] 740 Railway Labor Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 463 Habeas Corpus - Alien Detainee
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS - Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Sat TV
- [ ] 810 Selective Service
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [X] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 895 Freedom of Information Act
- [ ] 900 Appeal of Fee Determination Under Equal Access to Justice
- [ ] 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

- [ ] 1 Original Proceeding
- [X] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
28 USC Sections 1441 et seq., 28 USC Section 1332(d)(2)

Brief description of cause:
Complaint for civil penalties, etc.

**VII. REQUESTED IN COMPLAINT:**
[X] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
**DEMAND $** $5,000,000+
CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE ______ DOCKET NUMBER ______

DATE
July 7, 2008

SIGNATURE OF ATTORNEY OF RECORD
William N. Kammer

**FOR OFFICE USE ONLY**

RECEIPT # 152688 AMOUNT $350 APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

TAC 7/7/08

JS 44 Reverse (Rev. 12/07)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney tiling a case should complete the form as follows:

**I. (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II. Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III. Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV. Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V. Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When tlie petition for removal is granted, check this box.

Remanded &om Appellate Court. (3) Check this box for cases remanded to thedistrict court for hrther action. Use the date of remand as the lilitlg date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal tiom a magistrate judge's decision.

**VI. Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII. Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. 111 this space enter the dollar amount (in thousands ofdollars) being demanded or indicate other demand sucli as a preliminary injunclion.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES**
**DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 152688 - TC**

**July 07, 2008**
**15:43:08**

**Civ Fil Non-Pris**
USAO #.: 08CV1208
Judge..: M. JAMES LORENZ
Amount.: $350.00 CK
Check#.: BC2090

**Total-> $350.00**

FROM: SUSAN E. MASSEY VS.
COLDWATER CREEK, INC.